# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: Jeffrey Dickerson <br> Attorney at Law, Bar No. 2690 ) ) ) ) ) ) ) ) ) ) | Case No.: 2:17-cv-2486 <br><br> **ORDER TO SHOW CAUSE** |

## I.  DISCUSSION

This Court imposed reciprocal discipline on attorney Jeffrey Dickerson on July 3, 2014. (Order of Suspension, ECF No. 5).  On September 14, 2017, Jeffrey Dickerson ("Dickerson") filed his Petition for Reinstatement, (ECF No. 15), in this Court asserting that he has been reinstated by the Nevada Supreme Court. (Pet. for Reinstatement 1:18–21).  However, the Court finds Dickerson's Petition to be lacking for several reasons.

**Specificity required by Local Rule 11-7(i)**

First, Dickerson's Petition is not sufficiently specific as required by the Local Rules of this Court.

> The petition must contain a concise statement of the circumstances of the disciplinary proceedings, the discipline imposed by the court, and the grounds that justify the attorney's reinstatement. If this court imposed reciprocal discipline under section (e) of this rule, and if the attorney was readmitted by the supervising court or the discipline imposed by the supervising court was modified or satisfied, the petition must explain the situation **with specificity**, including a description of any restrictions or conditions imposed on readmission by the supervising court.

L.R. IA 11-7(i) (emphasis added).

Here, Dickerson fails to explain the additional condition the Nevada Supreme Court required in the Order for Reinstatement. Specifically, the order stated that "Dickerson shall complete six CLE credits in ethics, in addition to his annually mandated CLE credits, each year for the next two years." (Order of Reinstatement at 2, Ex. 1 to Pet. for Reinstatement, ECF No. 15). Nowhere in Dickerson's Petition does he address this or even acknowledge it. Moreover, Dickerson's Petition does not explain his present situation with specificity in addressing either previous conditions or new ones. *See* L.R. IA 11-7(i). Although Dickerson attached the Nevada Supreme Court's Order of Reinstatement in support of his Petition, merely attaching the order does not make his Petition sufficient under the Local Rules. Additionally, he has not provided his Petition for Reinstatement to the Nevada Supreme Court which required him to show by clear and convincing evidence moral qualification, competency, and that his resumption of the practice of law would not be detrimental to the integrity and standing of the Bar as required by Nevada Supreme Court Rule 116. Nev. S. Ct. R. 116(2).

Second, it is unclear whether Dickerson met the original conditions the State Bar required when it issued his suspension. In the Findings of Fact and Conclusions of Law, the State Bar mandated a suspension from the practice of law for a period of eighteen months and required that Dickerson must "retake and successfully pass the Professional Responsibility and Attorney Ethics portion of the Nevada Bar Examination prior to applying for reinstatement to Active Status." (Findings of Fact and Conclusions of Law 19:10–13). Although the Nevada Supreme Court's Order of Reinstatement states that Dickerson has "passed the required portion of the exam," Dickerson provides no evidence to this Court that this requirement has been met. (Order of Reinstatement at 1, Ex. 1 to Pet. for Reinstatement). As such, the Court requires Dickerson to file evidence that he has met all of his suspension's conditions.

**Honesty, trustworthiness, and fitness required by Local Rule 11-7**

Third, Dickerson's Petition fails to satisfy the specific admissions standards as required by this District's Local Rules. Specifically, the Local Rules will admit attorneys to the bar of this Court if they are "of good moral and professional character." L.R. IA 11-1(a)(1). Likewise, the Local Rules measure an attorney's ability to practice in this Court based on the attorney's "honesty, trustworthiness, or fitness." *See, e.g.*, L.R. IA 11-7(c), (d), (f)(1). Dickerson's suspension was based on three counts: (1) the Hussein litigation; (2) the Simon litigation; and (3) the Babiak litigation. (Findings of Fact and Conclusions of Law ¶¶ 3–58). Each of these counts requires Dickerson to better articulate in his Petition his moral and professional character in light of them. The Court addresses each count in turn.

<u>*Hussein Litigation*</u>

In the Hussein litigation, Dickerson filed a multitude of cases on behalf of Hussein in opposition to numerous court orders, and his conduct was deemed to be "reckless and unreasonable" and amounted to "bad-faith pursuit of his client's unsubstantiated and/or vexatious claims." (*Id.* ¶¶ 27). Dickerson provided as mitigating that he intended to pay the judgment that was entered against him for his conduct, and he proposed a plan for doing so. (*Id.* ¶ 30). However, Dickerson has not shown to this Court that he has completed his plan or is at least following through with it.

<u>*Simon Litigation*</u>

Turning to the Simon litigation, Dickerson represented the three plaintiffs, which included Simon, and helped them reach a settlement agreement for $700,000. (*Id.* ¶¶ 37–38). Out of that amount, the plaintiffs were to "share equally in the recovery after paying [an expert witness] a compromised fee of $200,000 and setting aside a reserve of $300,000 to pay [p]laintiffs' estimated expenses." (*Id.* ¶ 38). Dickerson was then to receive "25% of the remaining funds and 25% of any reserve funds that remained after paying expenses." (*Id.*).

Moreover, Simon asserted that payment to the plaintiffs included payment to Manuel Quiroz ("Quiroz"), her significant other and participant in the course of litigation. (*Id.* ¶¶ 39, 41).

The expert witness was paid $60,000 in consideration of the $140,000 that the plaintiffs had alleged that they already paid to the witness. (*Id.* ¶ 40). However, Dickerson later sent a letter to the three plaintiffs stating that the expert witness was disputing the amount paid to him post-settlement, and Dickerson also gave reasons why Quiroz would not receive his funds. (*Id.* ¶ 42). Dickerson then distributed the checks to the plaintiffs, and Ms. Simon objected to the distribution; Dickerson argued that the plaintiffs' execution of the settlement agreement was a consent to the representation despite the apparent conflict between the parties. (*Id.* ¶¶ 43–45).

In seeking reinstatement now, the Court questions whether Dickerson ever brought to the attention of the Discipline Board or the Nevada Supreme Court that Manuel Quiroz, the significant other of Vivian Simon (lead plaintiff in Simon litigation), brought suit against Dickerson personally for conversion and misappropriation of the $240,000 settlement reserve that was intended to reimburse Quiroz for the $225,000 in expenses and costs that he advanced in the Simon litigation.. (*See* Memorandum at 1–2, *Quiroz v. Dickerson*, 3:10-cv-00657-LRH-WGC ("*Quiroz* Case"), ECF No. 312). Specifically, the jury awarded Quiroz compensatory damages for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of his fiduciary duty, and negligence in the amount of $224,914. (Judgment, *Quiroz* Case, ECF No. 134). Additionally, the jury awarded Quiroz $100,000 for pain and suffering and $125,000 for punitive damages. (*Id.*). The judgment was entered on January 22, 2013. (*Id.*). Most significantly, the jury found "by clear and convincing evidence that Dickerson's wrongful conduct was engaged in with fraud, oppression or malice", and that Dickerson had breached his fiduciary duties to Quiroz, that his conduct was extreme and outrageous, and that Dickerson had misappropriated trust funds or money held in Dickerson's fiduciary capacity as an attorney (defalcation). (*See id.*); (*see also* Verdict Form, *Quiroz* Case, ECF No. 131).

Dickerson appealed, and on October 20, 2017, the Ninth Circuit affirmed the verdict. (*See* Memorandum, *Quiroz* Case attached to this Order as "Exhibit 1").

From the Court's current perspective, it is unclear as to whether this judgment was considered in the State Bar's Findings of Fact and Conclusions of Law. This Court questions whether Dickerson made any effort to identify or acknowledge the verdicts against him arising from the Simon case in January 2013, several months after the Disciplinary Board completed its original investigation and submitted its Findings of Fact, Conclusions of Law and Decision on October 31, 2012 (attached as "Exhibit 2"). The Court doubts whether the Nevada Supreme Court would have reinstated Dickerson had they been advised of this history.

Additionally, the Court is concerned as to whether Dickerson is in fact making payments to Quiroz pursuant to the result in this case since the affirmance of the verdict. The Ninth Circuit affirmed the Writ of Execution which was entered against Dickerson requiring him to pay over 25% of his non-exempt income toward satisfying the judgment. Although there were seemingly no conditions placed on Dickerson as a result of this verdict prior to the appeal, the Court now requires Dickerson to provide information as to the status of the Quiroz case and to provide in his amended petition how the result in the Quiroz case affects his moral and professional character as to his honesty, trustworthiness, or fitness as required by this Court.

### *Babiak Litigation*

Finally, in the Babiak litigation, Dickerson failed to stay in diligent contact with Babiak concerning deadlines. (Findings of Fact and Conclusions of Law ¶¶ 47–54). Babiak testified that he repeatedly requested additional information and that these requests went unanswered. (*Id.* ¶ 55). Moreover, Babiak stated that he did not learn of Dickerson's untimely filing of his appeal—as Babiak timely instructed him to do—until three years later when a Ninth Circuit clerk told Babiak about it over a phone call. (*Id.* ¶ 56).

Based on the facts in the Babiak litigation, combined with the Hussein litigation and Simon litigation, the Court is concerned that Dickerson does not have the "good moral and professional character" in meeting the "honesty, trustworthiness, or fitness" required to practice in this Court. *See, e.g.*, L.R. IA 11-1; L.R. IA 11-7(c), (d), (f)(1). Accordingly, the Court instructs Dickerson to amend his Petition for Reinstatement addressing the Court's concerns identified in this order. Moreover, upon receipt of the amended petition, the Court will then set a hearing for Dickerson to explain to the Court why he is deserving of reinstatement.

## II.    CONCLUSION

**IT IS HEREBY ORDERED** that the Petition for Reinstatement, (ECF No. 15), filed by Jeffrey Dickerson, Nevada State Bar No. 2690, is hereby **DENIED with leave to refile**.

**IT IS FURTHER ORDERED** that Dickerson's amended petition for reinstatement is due thirty days from the issuance of this order.

**DATED** this __3__ day of November, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court

# **<u>EXHIBIT 1</u>**

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 20 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MANUEL QUIROZ, Jr., | No.    13-15364 |
| Plaintiff-Appellee, | D.C. No. |
| v. | 3:10-cv-00657-LRH-WGC |
| JEFFREY A. DICKERSON, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Submitted October 18, 2017[**]
San Francisco, California

Before:  THOMAS, Chief Judge, WALLACE, and CALLAHAN, Circuit Judges.

Manuel Quiroz, Jr. advanced the funds to finance an action brought on

behalf of his wife and others by attorney Jeffrey A. Dickerson.  The case settled

and Quiroz expected to be repaid out of the proceeds.  When Dickerson refused to

---

[*]        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]        The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

reimburse Quiroz from these funds, Quiroz sued.  This appeal is by Dickerson from the jury's award in favor of Quiroz, and from the district court's award of certain funds to Quiroz.  We affirm.

**1.**  Quiroz initially filed his action in the District Court for the Northern District of California, which, on Dickerson's motion to dismiss or transfer, transferred the case to the District Court for Nevada, where Dickerson practiced law.  On appeal, Dickerson argues that the case should have been dismissed rather than transferred.

The general rule is that a transfer may be made under 28 U.S.C. § 1404(a) "despite a lack of personal jurisdiction."  17 *Moore's Federal Practice*, § 111.14[2] (3d ed. 2017); *see Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir. 1993).  In challenging a transfer order on appeal, the appellant must show that the transfer was an abuse of discretion and may be required to show prejudice. 17 *Moore's Federal Practice*, § 111.63.  Dickerson has shown neither abuse nor prejudice in the transfer of the case to the District Court for Nevada.

**2.**  Dickerson maintains that Quiroz's claims are based on the settlement agreement and that the agreement cannot be interpreted as recognizing Quiroz as a third-party beneficiary.  Thus, he argues the jury was not properly instructed.

2

Dickerson's assertions are not persuasive.  Quiroz's claims arise out of the retainer agreement pursuant to which Quiroz advanced the costs of litigation.  In addition, the settlement agreement, which was drafted by Dickerson, provides for plaintiffs to be reimbursed for paid expenses of litigation.  Although mixed questions of law are reviewed de novo, the factual findings underlying a district court's ruling are reviewed for clear error.  *United States v. Wilkes*, 662 F.3d 524, 532 (9th Cir. 2011).  Dickerson has not proffered an adequate basis for overturning the factual findings supporting the district court's legal conclusion that Quiroz was an intended third-party beneficiary.

Dickerson's arguments that Quiroz could not maintain claims for bad faith, breach of fiduciary duty, and negligence, are all based on his contention that, as a matter of law, he had no contractual relationship with Quiroz.  Accordingly, because the district court reasonably determined that there was a contractual relationship, these arguments fail.

Finally, Dickerson failed to include in the record the transcript of the district court's ruling on the admission of parol evidence.  Because the record is insufficient to permit our review, we do not address this argument. *See Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 877 F.2d 787, 789 (9th Cir. 1989).

**3.**   Dickerson challenges the jury question that read: "Do you find that plaintiff Quiroz has proven defalcation by defendant Dickerson by a preponderance of the evidence?"  He argues that the question was irrelevant to the issues before the jury and designed to insulate the judgment from bankruptcy.  The case relied on by Dickerson does not support his argument.  *R. H. Baker & Co. v. Smith-Blair, Inc.* addressed whether an omitted question should have been asked, not whether an erroneous question should have been omitted.  331 F.2d 506, 508 (9th Cir. 1964).  And even under Dickerson's reading, he has failed to explain why the defalcation finding is not essential to the judgment, particularly when the judgment explicitly referenced it.  Dickerson has not shown that the district court erred in asking the question.

**4.**   Dickerson argues that because another one of his clients allegedly instructed him not to pay Quiroz, the attorney-client privilege protects him from liability to Quiroz.  The case cited by Dickerson, *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kieby, LLP*, 583 F.3d 1232 (9th Cir. 2009), does not support his argument.  Dickerson has offered no persuasive authority for his novel contention.

**5.**   Finally, Dickerson argues that the district court erred in issuing a writ of execution and awarding Quiroz 25% of Dickerson's non-exempt income.  Federal Rule of Civil Procedure 69 provides that a money judgment may be enforced by a

writ of execution, or as the court otherwise directs, but the "procedure on execution

. . . must accord with the procedure of the state where the court is located, but a

federal statute governs to the extent it applies."  We have held that Rule 69 does

not allow the enforcement of a money judgment by contempt or methods other

than a writ of execution "except in cases where established principles so warrant."

*Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983) (quoting 7 *Moore's*

*Federal Practice* ¶ 69.03[2] (2d ed. 1982)).  Here, Nevada Revised Statute

§ 21.320 provides that a judge may order property of a judgment debtor applied to

the satisfaction of a judgment.  *See Greene v. Eighth Jud. Dist. Ct. of Nev.*, 990

P.2d 184 (Nev. 1999).  The case cited by Dickerson, *Schneider v. Nat. R.R.*

*Passenger Corp.*, 72 F.3d 17 (2d Cir. 1995), is inapposite, and Dickerson has not

carried his burden of showing that the district court's orders are inconsistent with

Rule 69.

The district court's orders are **AFFIRMED**.

# **EXHIBIT 2**

**STATE BAR OF NEVADA**

**NORTHERN NEVADA DISCIPLINARY BOARD**

STATE BAR OF NEVADA,

        Complainant,

vs.

JEFFREY A. DICKERSON ESQ.
STATE BAR NO. 2690,

        Respondent.

Case No.: NG10-0091,
NG11-0722, and
NG11-0362

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION**

    THIS MATTER came before a designated Formal Hearing Panel of the Northern Nevada Disciplinary Board (the "Panel") for hearing on Wednesday, September 12, 2012, and Thursday, September 13, 2012. The Panel consisted of Kait Flocchini, Esq, Chair, Julie Hoffman, Laymember, Michael Large, Esq., Tina Russom, Esq., and Moreen Scully, Esq. The State Bar of Nevada (the "State Bar") appeared and was represented by Deputy Bar Counsel, Patrick O. King, Esq. The Respondent, Jeffery A. Dickerson, Nevada State Bar No. 2690 appeared *in propria persona*.

## FINDINGS OF FACT

    Based upon the pleadings filed, the documentary evidence admitted as Hearing Exhibits1-32 and A-O, and the testimonial evidence of Mr. Dickerson, Kent Robison, Debbie Leonard, Vivian Simon, Manuel Quiroz, Victor Republicano, Paul Babiak, David Grundy, Stephen Guinn, Gilbert Coleman, Suellen Fulstone, Ian Silverberg, Daniel Hayward, Dora Lane, Anthony Hall, Craig Skau, Kathleen Parks, Brent Kolvet, Mark Mausert, and Eugene Wait presented at the hearing in these proceedings, the Panel makes Findings of Fact as follows:

    1.    Mr. Dickerson is an attorney licensed to practice law in the State of Nevada. At all relevant times, Mr. Dickerson's principal office for the practice of law was and is located at 9585

1 Prototype Ct., Suite A, in the City of Reno, County of Washoe, State of Nevada. *See* Hearing
2 Exhibit 23 (Letter from Jeffery A. Dickerson to Phillip J. Pattee, dated March 31, 2011, at 1).

3     2.     The State Bar of Nevada filed a Complaint against Mr. Dickerson on December 29,
4 2011. Mr. Dickerson received notice of the Complaint against him and of his right to respond on
5 December 30, 2011. Mr. Dickerson filed a Verified Answer to Complaint (hereinafter referred to
6 as "Answer") on May 1, 2012 and an Amended Verified Answer to Complaint (hereinafter
7 referred to as "Amended Answer") on May 15, 2012. Notice of the formal hearing was served on
8 Mr. Dickerson on or about August 16, 2012 and notice of the evidence and witnesses upon which
9 the State Bar intended to rely at the formal hearing was served on Mr. Dickerson on or about
10 August 20, 2012 and August 30, 2012.

11 **Count 1- Hussein Litigation**

12     3.     Mr. Dickerson represented Dr. Hussein ("Hussein"), a former professor at the
13 University of Nevada, Reno ("UNR") in a Federal Civil Rights Action, against the Nevada System
14 of Higher Education ("NSHE") beginning in 2004. *See* Complaint, ¶¶ 2-4 and Amended Answer,
15 ¶¶2-4.

16     4.     Mr. Dickerson filed, on behalf of Hussein, a second lawsuit ("Hussein 2") naming
17 NSHE and seventeen (17) individual defendants, many of whom were already named in the first
18 lawsuit. *Id.*

19     5.     Hussein 1 and Hussein 2 were consolidated. *Id.; see also* Hearing Exhibit 3.
20 (Second Order Holding Hussein S. Hussein and Jeffrey A. Dickerson in Contempt of Court) in
21 U.S. District Court of Nevada, Case No. 3:04-CV-0455.

22     Other Actions Filed

23     6.     Over the course of the next approximately five (5) years Mr. Dickerson represented
24 Hussein in fourteen (14) other legal actions against NSHE, and various specific employees,
25 administrators, agents, and attorneys of NSHE. Each lawsuit named several defendants. *See*
26 *generally* Hearing Exhibit 3, pg. 3 and Hearing Exhibit 7, pg. 2 (Second Amended Order and
27 Judgment, filed April 28, 2010, in U.S. District Court Case No. 3:04-cv-0455).

28

1883669v1

7.     Hussein dismissed Mary Dugan, UNR's Counsel, from Hussein 2. A separate lawsuit was subsequently filed against Mary Dugan. *See* Complaint ¶¶2-4 and Amended Answer ¶¶ 2-4.

8.     The Court warned Hussein and Mr. Dickerson against prosecuting claims which they could not substantiate.   Transcript of the Hearing, September 12, 2012 (hereinafter referred to as "Transcript 1"), 68:18-69:15.

9.     The Court warned Hussein and Mr. Dickerson against filing anymore suits that named opposing counsel as defendants. Hearing Exhibit 3, pg 4 (*citing* to Trans. of March 28, 2008 Hearing at 3:21-5:13).

10.     Throughout the course of lawsuits, the United States District Court, District of Nevada, entered several orders; one of which was a permanent injunction precluding Hussein and his counsel were from filing any more lawsuits arising out of the same facts. Hearing Exhibit 3, pg 2.

11.     Notwithstanding the Court's injunction, Mr. Dickerson, on behalf of his client, filed a twelfth (12) lawsuit.  Hearing Exhibit 3, page 3.

12.     Before the Court held a hearing on the motion for order to show cause, Hussein, through his attorney, filed a thirteenth lawsuit. Hearing Exhibit 3, page 4.

13.     After concluding that plaintiff and his counsel violated the court's July 31, 2007, injunction the court held plaintiff and his counsel in contempt, the court ordered plaintiff and his counsel to pay defendants $25,516.50 in fees and costs incurred by Defendants to enforce the injunction. Hearing Exhibit 3, pg 4.

14.     The Court instructed Hussein and Mr. Dickerson to come back before the Court in the event they had any questions. Hearing Exhibit 3, pg 4.

15.     Shortly thereafter, with permission of the Court, Mr. Dickerson filed a new lawsuit, Hussein 14. Exhibit 3, pg 5.  Hussein then amended Hussein 14 to include matters beyond the scope originally considered by the Court.  *See* Hearing Exhibit 3, pg. 14-15.

///

3

## Conduct in Discovery and Motion Practice

16.   Within the various litigations, Mr. Dickerson noticed the depositions of approximately one hundred (100) witnesses, only to withdraw many of those notices before the depositions proceeded. He also identified approximately four hundred (400) witnesses and requested production of over 50,000 documents. Transcript 1, 70:11-72:11.

17.   Mr. Dickerson filed many motions, only to withdraw those motions after defendant had incurred the fees to respond. *See* Hearing Exhibit 7, pg. 6; *see also* Transcript 1, 70:11-72:11. Mr. Dickerson filed discovery motions without first meeting and conferring with opposing counsel. *See Id.*

18.   Mr. Dickerson re-litigated the matter of subpoenas and First Amendment Rights multiple times. *See* Hearing Exhibit 3, pg. 16-19; *see also* Hearing Exhibit 5 (Order Holding Hussein S. Hussein and Jeffrey A. Dickerson in Contempt of Court in U.S. District Court Case No. 3:04-CV-0455), pg 5 and Transcript 1, 92:2-24.

19.   The Court found that Dickerson, in prosecuting Hussein's case, unnecessarily expanded discovery and caused defendants to incur the ensuing fees. *See* Hearing Exhibit 7, pg. 23.

20.   Twice during the court of litigation, the Court found Dickerson in contempt for suing and threatening to sue witnesses, behavior which was found to be abusive and involved misrepresentations and bad faith. *See* Hearing Exhibit 7, pg. 10; *see also generally* Hearing Exhibit 3 and Hearing Exhibit 5.

21.   The actions were contentious as indicated by the fact that NHSE counsel, Chuck Hilsabeck, Esq., was sanctioned for filing an untruthful and/or unsubstantiated affidavit. Transcript 1, 62:5-9.

22.   Mr. Dickerson filed multiple baseless motions for sanctions against defense counsel which were identified in the Court's Order. Hearing Exhibit 1 (Order in U.S. District Court Case No. 3:05-CV-00381), pg. 3 and Hearing Exhibit 7, pg. 10.

///

4

23.     Mr. Dickerson specifically filed five (5) Motions for Sanction which Hussein wrote and Mr. Dickerson reviewed prior to filing. Transcript of the Hearing, September 13, 2012 (hereinafter referred to as "Transcript 2"), 422:25-423:21.

24.     Mr. Dickerson's conduct in the various actions filed on behalf of Hussein was characterized as "litigation by terrorism." Transcript 1, 45:18-46:1.

25.     After years of litigation, including extensive discovery, the Court granted Defendant's Motion for Summary Judgment as to all defendants in the consolidated Hussein 1 and 2 action. *See* Hearing Exhibit 7, 13.

26.     Following the summary adjudication of the case the Court granted NSHE's Motion for Attorney's fees against Hussein and Mr. Dickerson in the amount of $1,142,403.25. U.S. District Court Judge Mahan detailed Respondent's "Reckless and Bad Faith Conduct" and entered Judgment in favor of the defendant, NSHE and against Hussein and Dickerson, jointly and severally. The amount represented a substantial amount of the fees incurred from the commencement of the suit until the time the Court issued the Summary Judgment Order, minus the Court's earlier award of contempt charges in the amount of $25,516.00. *See* Hearing Exhibit 7, pg. 31 and 33.

27.     The Court found that the totality of Mr. Dickerson's conduct was reckless and unreasonable and amount to bad-faith pursuit of his client's unsubstantiated and/or vexatious claims. *See* Hearing Exhibit 7, pg. 22-23, and 25.

28.     Mr. Dickerson filed an appeal of the judgment to the United States Court of Appeals for the Ninth Circuit, which was denied. *See* Transcript 2, 454:11-13 (Mr. Dickerson's acknowledgement of denial of Appeal of Judgment granting sanctions against him).

29.     The Court also summarily adjudicated Mr. Hussein's claims against Mary Dugan, Esq., counsel for University of Nevada – Reno, because after three years in litigation he failed to produce any evidence to support the allegations lodged against her. See Hearing Exhibit 1 (Order in U.S. District Court Case No. 3:05-CV-00381), pg. 3.

///

5

30. Mr. Dickerson presented the following in mitigation of the alleged violations:

  a. His intent to pay the judgment and a proposed plan for doing so. Transcript 2, 398:12-399:21.

  b. His current practice of better screening cases before accepting the representation. Transcript 2, 388:7-390:3.

  c. Testimony from many respected attorneys in the Reno Legal Community that he has acted competently and efficiently in other matters. *See e.g.* Transcript 2, 329:3-330:12, 339:12-19, and 342:18-343:9.

## COUNT 2- Simon Litigation

31. Mr. Dickerson represented Vivian Simon (on behalf of her personally and as representative of the Estate of Ruth Simon), Augustina Simon-Gonzalez (on behalf of the Estate of Donald Simon), and Mercedes Simon (on behalf of the Edward Simon Trust and Edward Simon Estate) in an action filed in Federal Court against Len Mann. The action, titled *Simon v. Mann* (3:04-cv-00472) was related to Mr. Mann's management of "the family business." *See* Transcript 1, 121:4-21.

32. The *Simon* action began in 2004. *Id.* Mr. Dickerson was retained as Plaintiffs' counsel in November 2008. *See* Exhibit 17. Mr. Dickerson was to be paid 25% of the value of any recovery, after costs and expenses, and not applicable to the recovery of stock. *See id.*

33. In February 2010, Ms. Simon identified a potential conflict between the Plaintiffs in an e-mail to Mr. Dickerson. *See* Hearing Exhibit 11 (E-mail dated February 24, 2010).

34. No waiver of the potential or actual conflict was obtained thereafter and Mr. Dickerson continued to represent all Plaintiffs in the action.

35. Victor Republicano was retained as an expert for Plaintiffs in the action in approximately 2006. Transcript 1, 179:9-25.

36. Mr. Dickerson testified that Plaintiffs were difficult clients with sometimes unrealistic expectations of the result that they may obtain in the action. *See* Transcript 2, 463:5-18.

6

37. On March 2, 2010 Plaintiffs settled their claims with Defendants at a settlement conference with the Court. *See* Hearing Exhibit 9 (Settlement Agreement in U.S. District Court Case No. 3:04-CV-00472). Mr. Dickerson and Mr. Republicano were present at the settlement conference. *Id.*; *see also* Transcript 1, 182:11-24.

38. The agreement was memorialized in a Settlement Agreement and executed in Court that same day. The Settlement Agreement stated that Plaintiffs were to receive $700,000. Plaintiffs were to share equally in the recovery after paying Mr. Republicano a compromised fee of $200,000 and setting aside a reserve of $300,000 to pay Plaintiffs' estimated expenses. Mr. Dickerson was to receive 25% of the remaining funds and 25% of any reserve funds that remained after paying expenses. *See* Hearing Exhibit 9.

39. Between settlement and the disbursement of funds to Plaintiffs on May 10, 2010, Plaintiffs, Manuel Quiroz, and Mr. Dickerson discussed how to pay expenses and disburse funds. *See e.g.* Hearing Exhibits 12 (E-mail dated May 3, 2010), 14 (E-mail string dated May 2, 2010), 18 (E-mail dated May 4, 2010), 19 (E-mail string dated March 21-22, 2010), and L (E-mail dated April 23, 2010). Part of that discussion was the amount which Mr. Republicano and Manuel Quiroz would be paid from the settlement funds *See Id.*

40. Mr. Republicano was paid $60,000 in consideration of the, at least, $140,000 that Plaintiffs represented had already been paid to Mr. Republicano. *See* Exhibit A.

41. Mr. Quiroz was not paid out of the settlement proceeds before disbursement of the remaining fund to Plaintiffs. *See* Exhibit A. Mr. Quiroz and Ms. Simon argued that all parties knew that the payment to "Plaintiffs" was intended to include payment to Mr. Quiroz, Ms. Simon's significant other and active participant in the course of the litigation. *See e.g.* Hearing Exhibit 18 and Transcript 1, 137:4-139:10.

42. On May 10, 2010, Mr. Dickerson sent a letter to all three Plaintiffs setting forth the manner in which the $700,000 settlement amount was disbursed. *See* Exhibit A. The letter identified that Mr. Republicano was disputing the payment of only $60,000 post-settlement and the reasons why Mr. Dickerson did not distribute funds to Mr. Quiroz. *See id.*

7

43.     Mr. Dickerson advised Plaintiffs to set aside $35,000 in case Mr. Republicano prevailed in his suit to collect $140,000. *See id.* Mr. Dickerson did not set aside $35,000 (25% of the $140,000 that was disbursed to him per the Fee Agreement). *See* Transcript 2, 459:1-23.

44.     After Mr. Dickerson sent the accounting and distribution checks to Plaintiffs, Ms. Simon objected to the distribution. *See* Hearing Exhibits 10 (E-mail dated May 15, 2010) and 15 (E-mail dated May 10, 2010).

45.     Mr. Dickerson testified that the Plaintiffs' execution of the Settlement Agreement was a consent to the representation despite the apparent conflict between the parties. *See* Transcript 2 at 465:22-466:9.

## COUNT 3- Babiak Litigation

46.     Mr. Dickerson represented Paul Babiak in an employment lawsuit titled Babiak v. State of Nevada Department of Taxation. *See* Complaint ¶ 37 and Amended Answer ¶ 37; *see also* Exhibit 22.

47.     On May 22, 2008, the case was effectively dismissed when the State's Motion for Summary Judgment was granted. *See* Complaint, ¶ 38 and Amended Answer ¶ 38.

48.     On or about June 6, 2008, Mr. Dickerson notified Mr. Babiak of the dispositive order and advised Mr. Babiak that he needed to authorize the filing of any appeal by June 23, 2008. *See* Amended Answer ¶ 42.

49.     Mr. Babiak testified that he authorized Mr. Dickerson to file the appeal when he spoke with Mr. Dickerson's assistant a few days after receiving the June 6, 2008 letter. *See* Transcript 1 at 231:1-8. Mr. Babiak also testified that he e-mailed Mr. Dickerson to authorize the filing of the appeal. *See* Transcript 1 at 231: 9-14.

50.     Mr. Dickerson did not file the appeal until July 5, 2008. This was outside the 30 day period authorized by the Ninth Circuit Rules of Appellate Procedure. *See* Hearing Exhibit 23 (Letter from Mr. Dickerson in response to Mr. Babiak's complaint to the Nevada State Bar.)

51.     Mr. Dickerson stated that he did not receive authorization from Mr. Babiak but filed the appeal anyway to "buy time" for a Motion for Reconsideration based on an anticipated

8

Supreme Court decision. *See* Exhibit 23. Mr. Dickerson also testified that he did not dispute the veracity of Mr. Babiak's testimony that he authorized an appeal to be filed. *See* Hearing Exhibit 23 and Transcript 1 at 414:22-415:5.

52.     On August 13, 2008, Mr. Dickerson then filed a Voluntary Dismissal of the appeal acknowledging that it was untimely and stating that Mr. Babiak would be seeking reconsideration of the underlying order. *See* Hearing Exhibit 24 (Voluntary Dismissal of Appeal Filed in U.S. Court of Appeals, Case No. 08-16567).

53.     Mr. Dickerson states that he filed a Motion for Reconsideration with the District Court on August 25, 2008. *See* Hearing Exhibit 23. That Motion was denied on October 29, 2008. *See id.*

54.     On November 25, 2008, Mr. Dickerson informed Mr. Babiak that the "effort to appeal to the Ninth Circuit [ ] failed" and that the Motion for Reconsideration was denied. *See* Hearing Exhibit 26 (Letter from Mr. Dickerson to Mr. Babiak).

55.     Mr. Babiak testified that his repeated requests for additional information, includingdocumentation, went unanswered. *See* Transcript 1 at 231:23-25.

56.     Mr. Babiak testified that he did not learn of the untimely filing of the appeal until approximately 2011 when a clerk at the Ninth Circuit told him of it during a telephone call. *See id.* at 232:1-7.

57.     Respected attorneys in the Reno Legal Community testified that Mr. Dickerson and has intentionally argued for the extension or modification of the existing law. *See* Transcript 2 at 323:2-10 and 329:12-24.

58.     Submitted to the Panel for decision are three claims by the State Bar that Mr. Dickerson violated each of the Rules 1.1, 1.2, 1.5, 1.8, 1.15, 3.1, 3.2, 3.3, 3.4 and 8.4 of the Nevada Rules of Professional Conduct. ("RPC"). *See* Complaint ¶¶ 24, 36, and 46.

///

///

9

**CONCLUSIONS OF LAW**

Based on the foregoing Findings of Fact, the Panel Hereby issues the following Conclusions of Law:

1. The Panel was designated by the Northern Nevada Disciplinary Board Chair to adjudicate this case and has jurisdiction over the Dickerson and the subject matter of these proceedings. *See* NEV. SUP. CT. R. 105.

2. Venue is proper is properly with the Northern Nevada Disciplinary Board and in the County of Washoe, State of Nevada. NEV. SUP. CT. R. 105.

3. The Nevada State Bar complied with the procedural requirements of SCR 105 for noticing the Complaint against Mr. Dickerson, noticing the Formal Hearing, and providing all required information prior to the Formal Hearing or Mr. Dickerson waived any timing requirements of SCR 105 by proceeding with the hearing as noticed. *See* Complaint dated December 29, 2011, Notice of Formal Hearing dated August 16, 2012, and Notices of Witnesses dated August 20, 2012 and August 30, 2012, respectively.

4. The State Bar must prove by clear and convincing evidence that Mr. Dickerson violated (i) Rules 1.1, 3.1, 3.2, 3.3, 3.4, 8.4, in NG 10-0091, (ii) 1.5, 1.8, 1.15, 3.3, 8.4, in NG 11-0722, and (iii) 1.1, 1.2, 3.2, 8.4 in NG 11-0362. *See* NEV. SUP. CT. R. 105(2)(e); In re Stuhff, 108, Nev. 629, 633-634, 837 P.2d 853, 856 (1992); Gentile v. State Bar, 106 Nev. 60, 62, 787 P.2d 386, 387 (1990).

**Count 1- Hussein Matter**

5. RPC 1.1 expressly states, "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. NEV. R. PROF. CONDUCT 1.1.

6. The Panel finds that Mr. Dickerson violated RPC 1.1. The evidence presented shows a lack of either knowledge and skill or a lack of thoroughness and preparation necessary for the representation. The evidence, suggests that the latter is the most likely reason behind the violation.

1883669v1

7. The violation of this rule is supported by:

   a. The filing of lawsuits against witnesses and opposing counsel. Hearing Exhibit 3, pg 4.

   b. Filings made without leave of court, and requests for relief which were not authorized. Hearing Exhibit 3, pg 7.

   c. Filing many motions only to withdraw them before consideration by the Court. *See* Hearing Exhibit 7, pg. 6; *see also* Transcript 1, 70:11-72:11.

   d. The challenging of subpoenas issued in Hussein 1 and 2, even though the court had already ruled on the issue, and attempting to re-litigate issues such as his First Amendment claim when the Court had already ruled that such was not protected. Hearing Exhibit 3, pg 13, 14.

   e. On behalf of his client, Mr. Dickerson also ignored the remedies available under the procedural rules and instead chose to file an entirely new action based upon what the Court perceived was a purported discovery violation. *See generally* Hearing Exhibit 3.

   f. Mr. Dickerson's willful violation of the Court's injunctions. Hearing Exhibit 3, pg 15, 19.

   g. Untimely moving in Hussein 1 and 2 to compel NSHE to produce comparative performance evaluations, when such request had been ruled three (3) times by the Court to be untimely. Hearing Exhibit 5, pg 5.

   h. Identification of approximately four hundred (400) witnesses, notice of approximately 100 witness depositions and withdrawal of many notices before depositions. Transcript 1, 70:11 – 72:11.

8. The Panel finds that the evidence indicates that these violative acts were not unique in Mr. Dickerson's practice. *See* Hearing Exhibit 7, pg. 24 (*quoting* Magistrate Judge McQuaid's finding that "this is just another example of the shoot from the hip legal work that this court is seeing in many of Mr. Dickerson's cases.")

11

1        9.     RPC 3.1 states, [a] lawyer shall not bring or defend a proceeding, or assert or

2 controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous,

3 which includes a good faith argument for an extension, modification or reversal of existing law. A

4 lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could

5 result in incarceration, may nevertheless so defend the proceeding as to require that every element

6 of the case be established. NEV. R. PROF. CONDUCT 3.1.

7        10.    The Panel finds that Mr. Dickerson violated RPC 3.1 in his conduct in the Hussein

8 Litigation as a whole.

9        11.    Specifically, Mr. Dickerson violated of this rule by:

10             a.     Filing five (5) frivolous motions for sanctions. Hearing Exhibit 1, pg. 3 and

11                 Hearing Exhibit 7, pg. 10.

12             b.     After three years of litigation, failing to be able to produce any evidence to

13                 support Hussein's accusations against Mary Dugan. Hearing Exhibit 1, pg. 3.

14                 This evidences a lack of basis in law or fact for Mr. Dickerson's actions.

15             c.     The challenging of subpoenas issued in Hussein 1 and 2, even though the

16                 court had already determined that those subpoenas were proper, and attempting to

17                 re-litigate issues such as Hussein's First Amendment claim when the Court had

18                 already ruled that such was not protected. Hearing Exhibit 3, pg 13-19; Transcript

19                 1, 92:2-24.

20             d.     Untimely moving in Hussein 1 and 2 to compel NSHE to produce

21                 comparative performance evaluations, when such request has been ruled three (3)

22                 times by the Court to be untimely. Exhibit 5, pg 5.

23        12.    No evidence was presented that Mr. Dickerson was attempting a good faith

24 argument for an extension, modification or reversal of existing law in these actions.

25        13.    RPC 3.2, in relevant part reads, "[a] lawyer shall make reasonable efforts to

26 expedite litigation consistent with the interests of the client." NEV.R. PROF. CONDUCT 3.2.

27 ///

28

14. The violation of this rule is supported by:

    a. The filing of multiple lawsuits, multiple motions, and multiple supplements to their motions. Exhibit 3, pg 2 and 3; Exhibit 5, pg 3.

    b. Mr. Dickerson also ignored the remedies available under the procedural rules and instead chose to file an entirely new action based upon what the Court perceived was a purported discovery violation. Exhibit 3, pg 18.

    c. Untimely moving in Hussein 1 and 2 to compel NSHE to produce comparative performance evaluations, when such request has been ruled three (3) times by the Court to be untimely. Exhibit 5, pg 5.

15. RPC 3.4, in part reads, "[a] A lawyer shall not:

(c) Knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;
(d) In pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;"

NEV. R. PROF. CONDUCT 3.4.

16. RPC 3.4 was violated in the following ways:

    a. Notwithstanding the Court's injunction, Mr. Dickerson, on behalf of his client, filed a twelfth (12th) lawsuit. Hearing Exhibit 3, pg. 3.

    b. Before the Court had held a motion for order to show cause on the filing of the 12th lawsuit, Hussein, through his attorney, filed a thirteenth (13th) lawsuit. Hearing Exhibit 3, pg. 4.

    c. Dickerson's willful violation of the Court's injunctions. Hearing Exhibit 3, pg 15, 19.

    d. Failing to meet and confer. Transcript 1, 71:13-14.

    e. Re-litigating subpoenas. See Hearing Exhibit 3, pg. 16-19, Hearing Exhibit 5, pg. 3, and Transcript 1, 92:2-24.

13

1    f.Identifying approximately 400 witnesses and noticing depositions of over 100

2    witnesses. Transcript 1, 70:11-72:11.

3    17.    RPC 8.4 states, "[i]t is professional misconduct for a lawyer to:

(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) Engage in conduct that is prejudicial to the administration of justice;
(e)State or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or
(f) Knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

NEV. R. PROF. CONDUCT 8.4.

18.    RPC 8.4 was violated in the following ways:

    a.    After three years of litigation, Hussein was unable to produce any evidence to support his accusations against Mary Dugan, which the court concluded was reasonably inferred to have only been brought for the purpose of creating a conflict. Exhibit 1, pg 3.

    b.    By suing and threatening to sue witnesses. Exhibit 4, pg 5.

    c.    By suing William Kvasnicka, a former UNR faculty member, who was sued solely for providing witness testimony. Exhibit 4, pg 4.

    d.    By filing many motions with meeting and conferring first. Transcript 1, 70:11-72:11

    e.    By withdrawing many motions after oppositions were filed. *See Id.*

19.    In whole, Mr. Dickerson's actions in the Hussein litigations shows a lack of client control, dearth of thoroughness in practice, and lack of diligence. This, combined with Mr. Dickerson's many years of practicing law, indicates to the Panel that Mr. Dickerson's actions in

14

1  these litigations is the result of habits formed over time, not inexperience. These habits are a
2  detriment to Mr. Dickerson's clients, the judicial process, and the profession as a whole and we
3  cannot condone them.

4  **Count 2- Simon Litigation**

5  20.   RPC 1.8(g) states that "[a] lawyer who represents two or more clients shall not
6  participate in making an aggregate settlement of the claims of or against the clients . . . unless each
7  client gives informed consent, in a writing signed by the client. The lawyer's disclosure shall
8  include the existence and nature of all the claims . . . involved and of the participation of each
9  person in the settlement."

10  21.   Mr. Dickerson violated RPC 1.8 in his representation of Plaintiffs in the *Simon v.*
11  *Mann* action by failing to fully disclose in writing and/or on the record the existence and nature of
12  the Plaintiffs' claims, the participation of each Plaintiff in the settlement, and the specific informed
13  consent of each Plaintiff to the aggregate compromise. Had these obligations been met, the
14  likelihood that Ms. Simon would have filed a grievance against Mr. Dickerson is arguably
15  substantially less. Mr. Dickerson's violation of this Rule of Professional Conduct is particularly
16  glaring given the evidence that he found these clients difficult to work with.

17  22.   RPC 1.15 (e) states that "[w]hen in the course of representation a lawyer is in
18  possession of funds or other property in which two or more persons (one of whom may be the
19  lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is
20  resolved. The lawyer shall promptly distribute all portions of the funds or other property as to
21  which the interests are not in dispute."

22  23.   Mr. Dickerson violated RPC 1.15 in his representation of Plaintiffs in the *Simon v.*
23  *Mann* action by failing to withhold funds from distribution to Plaintiffs and himself that were in
24  dispute by:

25         a. Mr. Republicano's known assertion that he was owed $200,000 from the
26            settlement funds, not just $60,000; and

27         b. Mr. Quiroz and Ms. Vivian Simon's claim that Mr. Quiroz should be reimbursed

28

15

for expenses paid in the course of the litigation. *See* Hearing Exhibits 9, 12, 14, 18, 19, A and L; See also Transcript 2, 459:1-23.

24.     Mr. Dickerson violated RPC 8.4, stated above, during his representation of Plaintiffs in *Simon v. Mann* by suggesting that Plaintiffs pay Mr. Republicano $60,000 pursuant to the letter of the Settlement Agreement despite evidence that shows Mr. Dickerson believed Mr. Republicano to be owed more than $60,000. See Hearing Exhibits 19 and A. This suggestion, Mr. Dickerson's conduct leading up to the payment to Mr. Republicano, and the eventual payment of only $60,000 to Mr. Republicano was, at least dishonest, and perhaps as egregious as misrepresentation.

25.     RPC 1.7 states

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
    (1) The representation of one client will be directly adverse to another client; or
    (2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
    (1) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
    (2) The representation is not prohibited by law;
    (3) The representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
    (4) Each affected client gives informed consent, confirmed in writing.

NEV. R. PROF. CONDUCT 1.7.

26.     The evidence presented is that the Simon Plaintiffs did not wave any potential or actual conflict that was apparent in Mr. Dickerson's representation of all of them. The evidence further shows that Mr. Dickerson did not obtain informed written consent to the continued representation of all Plaintiffs after Ms. Simon told him of a significant conflict between the Plaintiffs. . *See* Hearing Exhibit 11.

///

16

27.     Again, the evidence has shown that, at best, Mr. Dickerson failed to be thorough in the representation of his clients by failing to properly document conflicts and the waiver and/or resolution of those conflicts throughout the litigation. This failure has resulted in detriment to his clients, the judicial process, and the profession as a whole.

### Count 3- Babiak Litigation

28.     Mr. Dickerson violated RPC 1.1, stated above, during his representation of Mr. Babiak by failing to file a timely appeal of Mr. Babiak's action.

29.     Mr. Dickerson violated RPC 3.2, stated above, during his representation of Mr. Babiak by failing to file a timely appeal of Mr. Babiak's action.

30.     Mr. Dickerson violated RPC 8.4, stated above, during his representation of Mr. Babiak by failing to tell Mr. Babiak that the appeal to the Ninth Circuit was untimely filed and that it was voluntarily dismissed. *See* Hearing Exhibit 26 and Transcript 1, 232:1-7. Mr. Dickerson's response to the State Bar indicates that perhaps there was a reasonable basis for the filings with the Ninth Circuit, but his failure to convey that basis, with the full procedural history of the action, to his client during the representation was dishonest. *See* Hearing Exhibit 23.

31.     In addition, the Panel finds that evidence supports that Mr. Dickerson violated RPC 1.4.

32.     RPC 1.4 states that "[a] lawyers shall (1) promptly inform the client of any decision or circumstance with respect to which the clients informed consent is required by these Rules, (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished, (3) keep the client reasonably informed about the status of the matter, (4) promptly comply with reasonable requests for information . . . . [and] [a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

33.     The evidence presented shows that Mr. Dickerson violated RPC 1.4, stated above, during his representation of Mr. Babiak by:

a.     Failing to consult with Mr. Babiak regarding any intent to file an appeal of the

1    District Court's decision after the 30 days deadline and failing to obtain his consent

2    to implement this strategy (*see* Transcript 1, 242:21-244:3; *see also* Hearing

3    Exhibit 22 (Letter from Mr. Babiak to State Bar) and Exhibit 23;

4    b. Failing to inform Mr. Babiak of the untimely appeal (*see* Transcript 1, 242:21-

5    244:3; *see also* Hearing Exhibit 23 and Hearing Exhibit 26);

6    c. Failing to inform and/or consult with Mr. Babiak regarding the dismissal of the

7    appeal (*see* Transcript 236:7-237:10 and 244:4-245:7; *see also* Hearing Exhibit 23

8    and Hearing Exhibit 26);

9    d. Failing to respond to Mr. Babiak's requests for documentation (*see* Transcript

10    236:7-237:10 and 244:4-245:7; *see also* Transcript 1, 246:7-24, Hearing Exhibit 23,

11    Hearing Exhibit 24, and Hearing Exhibit 26).

12    34.    Missing a deadline, even an important one, may happen to an attorney over the

13    course of a long a career and it may result in discipline. However, the Panel is troubled by the

14    evidence that Mr. Dickerson failed to immediately notify his client of the missed deadline and his

15    efforts to remedy to consequences and/or of his strategy for filing late and seeking reconsideration

16    with the District Court. Again, at best, this shows a lack of thoroughness in practicing law. At

17    worst, it shows disregard for the client and the importance of the matter to him. This is another

18    example of Mr. Dickerson's actions harming the client, the judicial process and the legal

19    profession which cannot be regarded lightly.

20                              **DECISION AND ORDER**

21    In assessing the form of discipline to recommend, the Panel has accounted for a number of

22    aggravating and mitigating factors which must be considered. The Panel has considered that this

23    is the first time the State Bar has disciplined Mr. Dickerson in his many years of practice in the

24    State of Nevada. The Panel has considered the entirety of the evidence presented in the two day

25    hearing including the testimony of Paul Babiak and Vivian Simon, two of Mr. Dickerson's former

26    clients, and the testimony of many respected attorneys in the Reno Legal Community. The

27    evidence shows that Mr. Dickerson often had difficult clients with claims on which it was difficult

28

18

to prevail. Despite the precarious nature of the matters that Mr. Dickerson often handled, the evidence shows that Mr. Dickerson's usual course of conduct was to not be thorough in the representation of his clients whether in evaluating claims and litigation strategy or in explaining to his clients, in writing, the consequences of particular courses of action in a case. The evidence presented does not support a finding that this lack of thoroughness was motivated by a particular financial gain to Mr. Dickerson or that Mr. Dickerson's judgment was impaired by an external influence. This leaves the Panel without a clear explanation for Mr. Dickerson's ethical failures or what may be done to remedy those failures. Based on the foregoing, the Panel recommends that the Respondent be ordered:

1. Suspended from practice of law for a period of 18 months;

2. To retake and successfully pass the Professional Responsibility and Attorney Ethics portion of the Nevada Bar Examination prior to applying for reinstatement to Active Status in the State Bar of Nevada;

3. Within three (3) days of the effective date of any suspension order, to demonstrate to Bar Counsel that he has served by certified mail receipt requested written notice of his suspension to each of his clients; and

4. Within fifteen (15) days of the effective order of any suspension order, demonstrate to Bar Counsel that he has placed all his Nevada clients with other counsel, otherwise concluded the representation, or with the assistance of Bar Counsel, thereafter attempted to expeditiously aid any remaining client in finding new counsel.

R. KAIT FLOCCHINI, ESQ., Chair
Northern Nevada Disciplinary Board Panel

1883667v1