UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

IN RE JEFFREY A. DICKERSON

Case No. 2:17-cv-02486-MMD-LRH

PUBLIC REPRIMAND OF JEFFREY A. DICKERSON FOR UNAUTHORIZED PRACTICE OF LAW WHILE SUSPENDED FROM PRACTICE BEFORE THIS COURT

**DICKERSON HISTORY**

On July 3, 2014, attorney Jeffrey A. Dickerson ("Dickerson") was suspended from the practice of law in this court. His suspension followed and was reciprocal to his state suspension by the Nevada Supreme Court on May 9, 2014.[1] His federal suspension provided that he could petition for federal readmission in the event he was reinstated by the Nevada Supreme Court. On September 11, 2017, Dickerson was reinstated by the Nevada Court and, on the same date, he petitioned this court for federal reinstatement. On November 3, 2017, his petition for reinstatement was denied without prejudice based upon petition deficiencies. On January 8, 2018, Dickerson filed a renewed petition. On May 14, 2018, Chief Judge Navarro[2] ordered, in conjunction with his petition that Dickerson provide a report and accounting relative to satisfaction of approximately $1.6 million dollars in sanctions and judgments previously imposed against Dickerson in the federal cases related to his suspension. One week later, without response to Judge Navarro's

---

[1] Dickerson's state suspension was based in significant part upon serious misconduct in four different federal cases: *Hussein v. Board of Regents of Nevada System of Higher Education, et al.*, 3:06-cv-00317-ECR-RAM; *Hussein v. University and Community College System of Nevada, et al.*, 3:04-cv-00455-JCM-GWF; *Quiroz v. Dickerson*, 3:10-cv-00657-LRH-WGC; and *Babiak v. State of Nevada Department of Taxation*, 3:07-cv-00197-PMP-RAM.

[2] Relative to these proceedings, Judge Gloria M. Navarro was Chief Judge through August 31, 2019. Judge Miranda M. Du succeeded her as Chief Judge on September 1, 2019.

1

Minute Order, Dickerson withdrew his petition for reinstatement. His suspension continues to date and no further petitions for reinstatement have been filed.

**BACKGROUND CONCERNING REPORT AND RECOMMENDATION RELATIVE TO FURTHER DISCIPLINE**

On December 12, 2018, Chief Judge Navarro received correspondence from Paul Allen Kaylor regarding Dickerson and his alleged unlawful practice of law in a pending federal civil rights case arising principally from a trespassing arrest and conviction of Kaylor, a Pennsylvania policeman who was arrested as a result of intoxication and obstreperous conduct in a Lake Tahoe casino. *Kaylor v. Douglas County,* 3:14-cv-00651-MMD-WGC. In his correspondence the week following the dismissal of most of his suit, Kaylor complained, *inter alia*, that Dickerson made misrepresentations regarding the status of his law license, practiced law while on suspension, and collected thousands of dollars in legal fees from Kaylor.[3]

When a federal district judge, in this case Judge Navarro, "believes an attorney's conduct may warrant disbarment, reprimand, or other discipline by the court," the judge "may issue a written report and recommendation for the initiation of disciplinary proceedings." LR IA 11-7(g)(1). When such a report and recommendation is made, another district judge, the "reviewing judge", must review the recommendation to determine if clear and convincing evidence exists for the initiation of disciplinary proceedings. Based upon Kaylor's correspondence, Judge Navarro found that Dickerson's conduct may warrant disbarment (because he was already suspended) and issued a report and recommendation to determine if clear and convincing evidence existed for the initiation of disciplinary proceedings against Dickerson. ECF No. 27. The undersigned is the reviewing judge in this matter and invited Dickerson to file a response. ECF No. 30. Dickerson did file a response, as well as a declaration by Brian Morris, the attorney in good standing with whom Dickerson had been working in the *Kaylor* case. ECF No. 31.

///

///

---

[3] Kaylor's letter, with enclosures, and a later letter, with enclosures, are filed under seal in the *Kaylor v. Douglas County* case as ECF Nos. 65/66/86.

2

# FINDINGS AND CONCLUSIONS

Kaylor's case was a civil rights case undertaken by attorney Brian Morris in which he hired suspended attorney Dickerson as a paralegal. Kaylor was informed of Dickerson's suspension from federal practice. The case was a costly and largely unsuccessful lawsuit which extended over four and one-half years. Morris reserved control and authority over the case: Dickerson did not sign pleadings, attend depositions or make court appearances. However, Dickerson's work was all substantive legal work in nature.

Kaylor forwarded copies of what appears to be virtually all of the billings to him by Morris and Dickerson from December of 2014 through March of 2019. The billings were reasonably well itemized and show that Dickerson was performing legal research and drafting legal documents, reviewing discovery, and having multiple discussions principally with attorney Morris concerning Kaylor's case. In both Morris' and Dickerson's direct billings to Kaylor through January 2019 (over four years into the case), there was no identification of Dickerson's services as being paralegal in nature. Throughout the litigation, Morris billed at a rate of $350 per hour and Dickerson billed at $200 per hour. Kaylor paid approximately $28,000 in fees and costs to Morris and approximately $11,620 to Dickerson.

In December of 2016, Dickerson began billing Kaylor directly. In his recent declaration, attorney Morris stated that he approved the direct billings by Dickerson to Kaylor as a matter of convenience. Dickerson's direct billings were made in Dickerson's personal name or in the name of Dickerson Consulting. Dickerson sent 11 itemized billings to Kaylor over the period from December 2016 through May of 2018. Kaylor made payments by check and by credit card and Dickerson accepted both forms of payment. A copy of one personal check produced by Kaylor, dated April 27, 2018, was made payable to "Attorney Jeffrey Dickerson", indicating it was for "attorney's fees" and it was apparently accepted and negotiated by Dickerson.

In an email from Dickerson to Kaylor, dated September 18, 2017, Dickerson attached his invoice and announced that he is "now reinstated in Nevada, and soon will be entering your case once the federal court reciprocates, which should be today or tomorrow." The Nevada Supreme Court had reinstated Dickerson on September 11, 2017, and Dickerson petitioned for reinstatement

with this court on the same date. His petition was denied on November 3, 2017. However, his billings after September 2017 continued to show that he was working with Morris, that his services were substantive legal work, his rate continued at the $200 per hour rate and there was no reference to "paralegal services" or a "paralegal rate".

The undersigned has reviewed and researched the law in this matter and concludes that a suspended or disbarred attorney is not prohibited from providing paralegal services where direction and control of those services rests with the admitted attorney in charge of the case. The American Bar Association defines a paralegal as a "person, qualified by education, training or work experience who is employed or retained by a lawyer, law office, corporation, governmental agency or other entity and who performs specifically delegated substantive legal work for which a lawyer is responsible."[4] A suspended or disbarred attorney may work as a paralegal provided that the attorney does not participate in the unauthorized practice of law. *See In re Crowley*, 2016 WL 2742371, at *1 (Nev. May 9, 2016) (unpublished) citing *In re Jones*, 241 P.3d 90, 102-103 (Kan. 2010) (an attorney who has been suspended from the practice of law is permitted to work as a paralegal, however, the suspended lawyer's work must only be preparatory, under the supervision of the licensed attorney and must not involve client contact), and *Attorney Grievance Comm'n v. Brennan*, 714 A.2d 157, 162 (Ct. App. Md. 1998) (A suspended or disbarred attorney may "work as a paralegal, provided that the proper procedures and constraints are in place to assure that the public in general, and clients in particular, are not confused as to the person's status as a paralegal.").

Billing is a classic function and responsibility of the practicing attorney. Between the attorney and the client, it is a fundamental and integral component of the practice of law. Dickerson's direct billings to Kaylor itemized legal services he was performing, legal consultations he was having with Morris and others and created the impression by Kaylor that Dickerson was engaging in the practice of law. Morris hired Dickerson and Morris was the only person directly responsible for payment of Dickerson's paralegal fees. From December 2016 until May of 2018,

---

[4] ABA Standing Committee on Paralegals, CURRENT ABA DEFINITION OF LEGAL ASSISTANT/ PARALEGAL, (Adopted August 1997), https://www.americanbar.org/groups/paralegals/profession-information/current_aba_definition_of_legal_assistant_paralegal/.

Dickerson billed Kaylor directly, which caused Kaylor to believe that he was directly responsible for Dickerson's fees. This also caused confusion concerning Dickerson's status because the services for which Dickerson was billing were for substantive legal work. The confusion was clearly exacerbated when fee disputes were fielded by Dickerson and payments were being personally accepted by both check and credit card by Dickerson. In none of his direct billings did Dickerson ever refer to his work as a paralegal service or fee.

It is of the utmost importance that a suspended attorney ensures and guards against any misunderstanding about whether the attorney is authorized to practice law and he bears the burden of making sure clients are clear on the attorney's status. *See Matter of Contempt of DeLoney*, 689 N.E.2d 431, 433 (Ind. 1997) ("A suspended or disbarred lawyer bears a heavy responsibility to guard against any misunderstanding about the lawyer's status and has an affirmative obligation to insure that the public understands that he or she is no longer a lawyer.").[5] Dickerson's actions and conduct through his direct billings and communications to Kaylor created confusion as to Dickerson's status.

The lawsuit was expensive to Kaylor, and he is understandably bitter over the lack of success and expense incurred. Although most of his lawsuit was dismissed, summary judgment was denied on one claim against the arresting law enforcement officer, and it resulted in a settlement to Kaylor, six months after Morris withdrew from his representation of Kaylor, principally due to the break-up of Morris' attorney/client relationship with Kaylor. Kaylor represented himself pro se in the settlement conference presided over by Magistrate Judge William G. Cobb and was complimentary of Judge Cobb's service.

Based upon the findings in this order, it appears that admitted attorney Morris and Dickerson attempted and intended that Dickerson provide paralegal services, and that direction and control of those services rested with admitted attorney Morris. However, through the direct billings and communications to Kaylor by Dickerson over approximately one and one-half years

---

[5] *See also* David Elkanich, Peter Jarvis, & Sylvia Stevens, *Suspended Animation: A lawyer's life as a legal assistant*, OREGON STATE BAR BULLETIN (Jan. 2006).

during the pendency of Kaylor's lawsuit, Dickerson crossed the line into the unauthorized practice of law.

Dickerson was given thirty (30) days to challenge this Decision as a formal public reprimand for engaging in the unauthorized practice of law by directly billing for legal services and creating confusion as to his limited status as a suspended attorney. No challenge has been filed by Dickerson and discipline should therefore be imposed against him.

Good Cause Appearing, Jeffrey A. Dickerson is in contempt of court and he is hereby publicly and formally reprimanded for engaging in the unauthorized practice of law while suspended before this court.

The Clerk of Court shall distribute copies of this disciplinary order as provided in LR IA 11-7(h).

IT IS SO ORDERED.

DATED this 12th day of December, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE and
REVIEWING JUDGE